IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HELEN JONES                                              PLAINTIFF


VS.                              CIVIL ACTION NO. 1:06—cv—734—WHB—RHW


MISSISSIPPI FARM BUREAU MUTUAL INSURANCE CO.;
FIDELITY NATIONAL INSURANCE CO.;
ROSS—KING—WALKER, A Division of Hankcock Insurance;
and JOHN DOES A, B, C. D, E, F, G and H          DEFENDANTS


ROSS—KING—WALKER                                 CROSS—PLAINTIFF

VS.

FIDELITY NATIONAL INSURANCE CO.                  CROSS—DEFENDANT


OPINION AND ORDER

This cause is before the Court on three related motions for summary judgment.  The Court has considered the motions, responses, rebuttals, sur-rebuttal, attachments to the pleadings, as well as supporting and opposing authorities and finds:

The Motion of Fidelity National Insurance Company for Summary Judgment as to Plaintiff's claims is well taken and should be granted;

The Motion of Ross—King—Walker for Summary Judgment as to Plaintiff's claims is well taken and should be granted; and

The Motion of Fidelity National Insurance Company for Summary Judgment as to Cross-Plaintiff's claims is well taken and should be granted.

## I.  Factual Background and Procedural History

Beginning in 1985, Plaintiff Helen Jones ("Jones") purchased flood insurance through the National Flood Insurance Program ("NFIP"), which covered both the structure and contents of her home in Pass Christian, Mississippi.  For several years, Jones was insured under a policy issued by Omaha Property and Casualty Insurance Company ("Omaha") that she had purchased through Defendant Ross-King-Walker ("RKW").  In 2004, Defendant Fidelity National Insurance Company ("Fidelity") acquired books of business from Omaha.  In accordance with a FEMA Order previously issued to Ohama, Fidelity was required to re-underwrite Jones's flood policy.

Between April 25, 2004, and April 25, 2005, Jones was insured under a flood policy issued by Fidelity bearing Policy No. 99-01947378-2004 ("Flood Policy").  The premium paid for this policy was $380.00.  On March 25, 2005, Fidelity sent RKW a correspondence informing the latter that additional documentation was required to support the then-existing insurance rating on Jones's Flood Policy.  Specifically, Fidelity requested that RKW provide a complete insurance application, an elevation certificate, information regarding the size of the enclosure, and information regarding either the number and size of existing vents or the existing square inch total of compliance venting.  Through this correspondence, RKW was also informed:

> Please provide this information to our office within five days.  If you cannot obtain all information within five

2

> days, please forward what you have and contact [us]
> immediately.  If we do not hear from you, we will be
> forced to reform the policy using tentative rates.  If
> the policy cannot be reformed, the policy will be marked
> for non-renewal at the time of expiration.

RKW neither contacted Fidelity nor provided the requested information.

On April 28, 2005, Fidelity mailed RKW and Jones a Flood Insurance Renewal Premium Notice ("Renewal Notice"), indicating that the premium for renewing the Flood Policy was $1,464.00.  The Renewal Notice also specified that the Renewal Effective Date of the Flood Policy was April 25, 2005, and that payment of the renewal premium was due on April 18, 2005.  The reverse side of the Renewal Notice contains the following "Important Information":

> 1.  The policy indicated on the reverse side will expire
> at 12:01 A.M. on the date shown unless the renewal
> payment is received by the Flood Insurance Processing
> Center within 30 days following the expiration date, in
> which case the policy will be renewed without any lapse
> in coverage.  If payment is not received within 30 days
> of the expiration date, the policy may be renewed and a
> thirty-day waiting period, commencing from the date
> premium is received, will apply before coverage is
> effective.

On or about that same date, Fidelity also sent RKW and Jones a Flood Insurance Expiration Notice ("Expiration Notice") indicating that Jones's Flood Policy had expired on April 25, 2005, but could be reinstated if she timely paid the renewal premium. Specifically, the reverse side of the Expiration Notice provides:

> 1.  The policy indicated on the reverse side expired
> 12:01 A.M. on the date shown unless the renewal payment
> is mailed to the flood processing center and the payment

3

is RECEIVED within 30 days following the expiration date, in which case the policy will be renewed without any lapse in coverage. If payment is not received within 30 days of the expiration date, the policy may be renewed and a thirty-day waiting period, commencing from the date premium is received, will apply before coverage is effective....

2. To obtain a reissue of an expired policy with a revised effective date, you or your agent must mail Part B of this notice (or your agent can mail a new application) together with the premium payment for insurance option selected ..., to the flood processing center within 90 days following the expiration date of this policy. If Part B of this or an application and premium payment are received by the flood processing center within 30 days following the date and time of the expiration (expiration date plus 29 days), the new policy is placed in force with no lapse of coverage. If Part B of this notice or an application and premium payment are received by the flood processing center beyond the 30 days period but within the 90 days following the date and time of the expiration (expiration date plus 89 days), the policy is placed in force 30 days following receipt.

        ....

IF MORE THAN 90 DAYS HAS PASSED SINCE THE POLICY EXPIRATION DATE, A NEW APPLICATION MUST BE SUBMITTED BY THE AGENT

After receiving the Notices, Jones contacted RKW regarding the increase in the renewal premium, and was told she needed to obtain an Elevation Certificate on her property. Jones obtained the Elevation Certificate on May 5, 2005. There is considerable dispute in the record regarding when Jones forwarded the Elevation Certificate to RKW. What is not disputed is that Jones did not remit the required $1,464.00 renewal premium to Fidelity within either the thirty or ninety-day periods prescribed in the Renewal Notice and/or Expiration Notice.

4

On or about August 23, 2005, Jones, through RKW, submitted a new application for flood insurance to Fidelity, and paid the required $317.00 premium for the requested policy.  Jones's home was destroyed by Hurricane Katrina sometime on August 29, 2005.  On August 30, 2005, Fidelity issued Jones a new flood insurance policy, bearing Policy No. 23-2510213038, that went into effect on September 22, 2005.

On September 9, 2005, Jones submitted a Property Loss Notice to RKW seeking to recover proceeds under the Flood Policy for the total destruction of her home and its contents during Hurricane Katrina.  RKW, in turn, submitted a Property Loss Notice to Fidelity on October 17, 2005.  Fidelity denied Jones's claim on July 17, 2006, on the basis that the Flood Policy had expired for lack of payment and, therefore, was not in effect when the alleged loss occurred.

On June 30, 2006, Jones filed a lawsuit against Fidelity and RKW in the Circuit Court of Harrison County, Mississippi.[1]  In her Complaint, Jones alleges the following against Fidelity and RKW:

> 14.  Plaintiff purchased a flood policy from Defendant Fidelity National through its agent, Defendant Ross-King-Walker, on or about April 25, 2004.  The Defendant Fidelity National and Defendant Ross-King-Walker negligently, gross negligently and with reckless disregard failed to notify the Plaintiff of the expiration of her flood insurance policy as required by law.

---

[1]  Jones's claims against Mississippi Farm Bureau Mutual Insurance Company, which was also named as a defendant to the lawsuit, were dismissed on Joint Motion on July 9, 2007.  See Docket No. 32.

15.   Fidelity National and Ross-King-Walker, by and through their agents and employees, failed to properly notify the Plaintiff of the expiration of her flood insurance policy. Fidelity National and Ross-King-Walker negligently, grossly negligently, and recklessly allowed the flood insurance policy of the Plaintiff to lapse contrary to National Flood Insurance Program regulations. As a direct and proximate result of the negligence, gross negligence, and reckless disregard for the rights of the Plaintiff by National Fidelity and Ross-King-Walker, the Plaintiff suffered damages .... including but not limited to not receiving benefits of the subject contract of insurance and other damages, all of which were forseeable by these Defendants.

16.   The acts and conduct of Fidelity National and Ross-King-Walker, their agents and employees, discussed herein above, include the failure to properly or adequately notify the Plaintiff of the expiration of her flood insurance policy; unreasonable delay in providing the correct premium rate for the property of the Plaintiff; improper interpretation and application of the terms and conditions of the subject policy of insurance and regulations governing the issuance of the policy; all of which including other acts and omissions are part of a past, present, and continuing pattern and practice of conduct of [] Fidelity National and Ross-King-Walker toward the insured herein who suffered damages and losses as a result of Hurricane Katrina.

See Compl., ¶¶ 14-16.  In addition to answering Jones's Complaint,

RKW filed a cross-claim seeking indemnification from Fidelity for

any judgment entered against it in these proceedings.

The case was timely removed, and the Court found it could

properly exercise subject matter jurisdiction pursuant to 28 U.S.C.

§ 1331.  See Mem. Op. Den. Mot. for Remand [Docket No. 27]; Mem.

Op. Granting Mot. to Dismiss Claims [Docket No. 63].  In addition,

the Court previously dismissed Jones's claims for extra-contractual

damages, including her claims for emotional distress and punitive

6

damages, <u>see</u> Mem. Op. [Docket No. 63], and her demand for a jury trial.  <u>See</u> Order [Docket No. 73].  The motions of the defendants for summary judgment are now before the Court.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u>, <u>Moore v. Mississippi Valley State Univ.</u>, 871 F.2d 545, 549 (5th Cir. 1989); <u>Washington v. Armstrong World Indus.</u>, 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of

material fact.  <u>Celotex</u>, 477 U.S. at 323.  The movant need not, however, support the motion with materials that negate the opponent's claim.  <u>Id.</u>  As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim.  <u>Id.</u> at 323-24.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III.  Legal Analysis

Jones's negligence claim relates to the manner in which the Flood Policy she purchased in 2004 was administered.  Specifically, Jones alleges that the defendants failed to properly notify her of

the expiration of the subject Flood Policy, failed to timely provide a correct premium for renewing that policy, and improperly interpreted and applied the terms of the Flood Policy as well as governing regulations.  See Compl., ¶¶ 14-16.  Jones further alleges that the defendants negligently allowed her Flood Policy to lapse contrary to NFIP regulations.  Id. at ¶ 15.  The Court previously found that because "the allegations of the complaint assert that [Jones's] claim is for non-renewal of an existing flood policy, ... these allegations state a cause of action that does arise under federal law, specifically under the National Flood Insurance Act, 42 U.S.C. § 4001, et seq., and the governing regulations."  See Mem. Op. [Docket No. 63], at 4 (citing Williams v. State Farm Ins. Co., Civil Action No. 06-9300, 2007 WL 1029477 (E.D. La. Mar. 29, 2007), and Newman v. Allstate Ins. Co., Civil Action No. 06-3757, 2006 WL 2632116 (E.D. La. Sept. 12, 2006)). The Court also found that if "the defendants followed the requirements of the regulations concerning renewal notification and [Jones] did not take the steps necessary to renew her flood policy, the lapse of the policy would not be the result of negligence on the part of either of the defendants."  Id.

The following discussion of the NFIP is taken from Santangelo v. State Farm Fire & Casualty Insurance Co., Civil Action No. 06-828, 2007 WL 1655549, at *3-4 (E.D. La. June 6, 2007)(alterations in original).

The National Flood Insurance Act of 1968 established the National Flood Insurance Program.  42 U.S.C. §§ 4001-4129....

On January 1, 1978 HUD terminated the National Flood Insurance Association program and assumed all operational responsibilities, making the Federal Emergency Management Agency ("FEMA") principally responsible for its operation, pursuant to 42 U.S.C. § 4071.

In 1983, FEMA promulgated regulations that provided for claims adjustment by private insurers operating as "Write-Your-Own" insurance companies ("WYO's"). 44 C.F.R. §§ 61.13(f), 62.23(a). The flood insurance policies issued under the NFIP are called Standard Flood Insurance Policies ("SFIP").  An (sic) SFIP may be purchased directly from FEMA, see 44 C.F.R. § 62.3(c), or through a WYO carrier.  44 C.F.R.  61.13(f).  The relationship between FEMA and WYO carriers is defined in 44 C.F.R. Pt. 62., App. A.

          ....

[I]n order to maintain control over the provisions of the flood insurance policy, the government does not allow the WYO companies to alter the SFIP's.  44 C.F.R. §§ 61.4(b), 61.13(d). FEMA regulations establish the terms of the SFIP, the rate structures, and premium costs. 42 U.S.C. § 4013.  Yet, WYO companies have substantial autonomy in the marketing and handling of their claims.  "In carrying out its function under this subpart, a WYO Company shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs, subject to the Act and regulations prescribed by the Administrator under the Act." 44 C.F.R. § 62.23(e).

With respect to what law applies in interpreting the provisions of the SFIP ...:

     It is well established that federal statutory and common law governs the interpretation of the SFIP. Linder and Assocs., Inc. v. Aetna Cas. and Sur. Co., 166 F.3d 547, 550 (3d Cir. 1999).  Thus, "neither the statutory nor decisional law of any particular state is applicable to [the SFIP]." Id. (quoting Sodowski v. National Flood Ins. Program, 834 F.2d 653, 655 (7th Cir. 1987)).

> Under federal common law, the SFIP is
> construed using standard insurance law
> principals.  Id.  These principals dictate
> that the SFIP is to be interpreted according
> to its plain, unambiguous meaning, keep [sic]
> interpretation should be 'uniform throughout
> the country' and that 'coverage should not
> vary from state to state.' Id. (quoting Nelson
> v. Becton, 929 F.2d 1287, 1291 (8th Cir.
> 1990)).  Nevertheless, ambiguities should be
> construed in favor of the insured and against
> the insurer.  Id. (citing Aschenbrenner v.
> United States Fid. & Guar. Co., 292 U.S. 80,
> 84-85 (1934).

Rodgers v. Allstate Ins. Co., 2007 WL 1029480, at *4
(E.D. La. Mar. 30, 2007).

## A.  Jones's Claims Against Fidelity

As discussed above, Jones alleges that Fidelity was negligent
by failing to provide proper notice of the expiration of her Flood
Policy, and by improperly interpreting and applying the terms of
that policy as well as governing regulations.  See Compl. ¶¶ 14-16.
Jones further alleges that this negligence caused her Flood Policy
to lapse contrary to NFIP regulations.  Id. at ¶ 15.  In the
pleadings before the Court, Jones does not cite to any term of the
Flood Policy that was allegedly breached, improperly interpreted,
or misapplied by Fidelity.  Jones does, however, argue that
Fidelity breached its duty to properly notify her of the expiration
of the Flood Policy as required by the federal regulations that
govern the renewal of SFIPs, specifically 44 C.F.R. Pt. 61, App.
(A)(1), Section VII, H, which provides:

> 1. This policy will expire at 12:01 a.m. on the last day
> of the policy term.

11

2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy.  In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

4. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.

In support of its Motion for Summary Judgment, Fidelity argues that Jones's Flood Policy expired because she did not remit the required $1,464.00 renewal premium.[2]  Jones does not dispute that she did not pay the renewal premium.  Instead, Jones contends that because Fidelity did not mail a timely Renewal Notice, her Flood

---

[2]  Fidelity raises this argument in the event Jones's Complaint is read to include a breach of contract claim. Although a breach of contract claim is not alleged in the Complaint, the Court will nevertheless consider the argument as Jones alleges that Fidelity negligently breached its statutory duties regarding the renewal of her Flood Policy.

Policy did not expire and, therefore, was in effect at the time her property was destroyed by Hurricane Katrina.  Specifically, Jones argues that under 44 C.F.R. 61, App. A(1), Section VII, (H)(3), Fidelity was required to send her a Renewal Notice prior to the date on which the renewal premium was due.  As Fidelity did not mail the Renewal Notice until April 28, 2005, which was ten days after the renewal premium was due, and three days after the subject flood policy expired, Jones claims that Fidelity was required to mail her a second bill providing a revised due date for paying the renewal premium.  Jones further argues that the Flood Policy could not have expired unless or until Fidelity mailed her a second bill, and she failed to pay the required renewal premium before the revised due date.

In the opinion of the Court, the public policy purpose of Subsection H(3) is to ensure that policy holders receive notice that their renewal premiums are due so they may timely remit the required premium and avoid lapses in coverage.[3]  If the policy holder does not receive notice before the renewal premium is due, either because it was untimely mailed or incorrectly addressed, the policy holder may receive an extension of time in which to pay the renewal premium.  In order to receive the extension, the policy holder is required to notify the insurer of the untimely or non-receipt of the renewal notice.

---

[3]  Accordingly, the Court rejects Fidelity's argument that it complied with Section H(3) by mailing, albeit untimely, a Renewal Notice to Jones.

Again, Jones alleges that Fidelity was negligent by failing to provide proper notice of the expiration of her Flood Policy, by improperly interpreting and applying the terms of that policy as well as governing federal regulations, and by allowing the Flood Policy to lapse. On these claims, the record shows that Fidelity did not mail the Renewal Notice until April 28, 2005, which was ten days after the renewal premium was due. See Pl.'s Resp. at Ex. 5; Def.'s Mot. for Summ. J., Ex. 1 (Price Aff.), at ¶¶ 5-6. Accordingly, the Court finds that Fidelity failed to timely mail the subject Renewal Notice to Jones as required under 44 C.F.R. 61, App. A(1), Section VII, (H)(3). The Court, however, additionally finds that Jones has failed to show that there exists a genuine issue of material fact as to whether this failure resulted in the lapse of coverage about which she complains.

First, Jones has not presented any evidence that she would have paid the required $1,464.00 renewal premium if she had received the Renewal Notice prior to April 18, 2005. Second, the record shows that Jones did not pay the required renewal premium even though she was notified, albeit untimely on or about April 28, 2005, that the premium was due and owing. Finally, under the terms of the Renewal Notice, Jones was expressly notified that she could renew the Flood Policy, and there would be no lapse in coverage, by remitting the required $1,464.00 renewal premium within 30 days following the expiration date of that policy, i.e. before May 25,

14

2005.  Again, Jones does not dispute that she did not pay, or attempt to pay the required renewal premium at any time.  Based on the evidence before it, the Court finds that Jones has failed to show that there exists a genuine issue of material fact with regard to whether the lapse of coverage under the subject Flood Policy resulted because the Renewal Notice was untimely mailed.  Instead, it appears from the record, that the lapse occurred, if at all, because Jones failed to remit the required renewal premium.  Accordingly, the Court finds that Fidelity is entitled to summary judgment on Jones's negligence claims, including the negligence *per se* claim she raises in her Response to the Motion for Summary Judgment, to the extent these claims are predicated on allegations that Fidelity (1) negligently failed to provide proper notice of the expiration of her Flood Policy, (2) improperly interpreted and applied the terms of that policy as well as governing federal regulations, and (3) negligently allowed her Flood Policy to lapse contrary to NFIP regulations.

The Court likewise finds that Fidelity is entitled to summary judgment on Jones's claim that her Flood Policy did not lapse because of the failure of Fidelity to timely mail her Renewal Notice.  Again, the record shows that Fidelity mailed the Renewal Notice on April 28, 2005, and that Jones received it sometime thereafter.  See Pl.'s Resp., at Ex. 5 (showing that the envelope in which that Renewal Notice was mailed was post marked April 28,

15

2005).  The Renewal Notice clearly shows that payment of the required $1,464.00 renewal premium was due on April 18, 2005.  As such, the Court finds that Jones knew or should have known that the Renewal Notice was untimely at the time she received it.

The record additionally shows that although Jones knew the Renewal Notice was untimely, she made no attempt to notify Fidelity of this breach until March 2, 2006.  Id. at Ex. 13.[4]  Under these circumstances, i.e. in a case in which the insured has knowledge of the untimely mailing of the renewal notice but fails to diligently either renew the policy or notify the insurer of the untimely notice, the Court finds to allow the one-year period prescribed by 44 C.F.R. Pt. 61, App. (A)(1), Section VII, H, to provide coverage in perpetuity would not serve any public purpose.  Accordingly, the Court finds that Jones has failed to show that there exists a genuine issue of material fact with regard to whether the coverage under the subject Flood Policy was extended based on the failure of Fidelity to timely mail the Renewal Notice.

In her Complaint, Jones also alleges that Fidelity was negligent because it failed to timely provide a correct flood

---

[4]  Jones's claim that Fidelity was notified of the untimely mailing of the subject Renewal Policy in 2005 is not supported by the record.  Although Jones submitted two correspondences, dated September 23, 2005, and October 12, 2005, respectively, in which she complains of the untimely receipt of the Renewal Notice, the correspondences are addressed only to RKW.  Jones has not presented any evidence to show that RKW forwarded either of these correspondences to Fidelity.

insurance premium for renewing the subject Flood Policy.  On this issue, the record shows that Fidelity, when it acquired Jones's Flood Policy from Omaha, was required to re-underwrite that policy under a pre-existing FEMA Order.  <u>See</u> Mot. for  Summ. J., Ex. A (Price Aff.), at ¶ 4.  To comply with the FEMA Order, Fidelity sent a correspondence to Jones's agent on March 25, 2005, requesting additional information, including a complete insurance application, an elevation certificate, and information regarding the size and type/amount of venting of the property.  <u>Id.</u> at Ex. 3.  When Fidelity did not receive the requested information, it calculated the renewal premium using tentative rates.  <u>Id.</u> at Ex. A (Price Aff.), at ¶ 5.

Jones has not presented any evidence that Fidelity either (1) received the requested information prior to the date on which the Renewal Notice was mailed, or (2) was prohibited from calculating the renewal premium using tentative rates.  Accordingly, the Court finds that Jones has failed to establish a genuine issue of material fact with regard to whether Fidelity was negligent in failing to timely provide a correct flood insurance premium for renewing the subject Flood Policy and, therefore, that Fidelity is entitled to summary judgment on this claim.

## B.  Jones's Claims Against RKW

Jones claims against RKW are identical to those alleged against Fidelity.  <u>See</u> Compl. at ¶¶ 14-16.  RKW argues that it is

17

entitled to summary judgment on Jones's claim that it was negligent in failing to provide proper notice of the expiration of her Flood Policy, improperly interpreting and applying the terms of the policy as well as governing federal regulations, and allowing the Flood Policy to lapse, because it did not owe any duty to Jones with regard the renewal of her policy.  In support of its argument, RKW has submitted evidence that Jones's Flood Policy was a "direct bill account" and, as such, all renewal notices were mailed by Fidelity directly to Jones.  See Mot. for Summ. J. [Docket No. 100], Ex. 11 (Davis Aff.) at ¶ 6.  RKW has also submitted evidence that it was not involved in the renewal process or rating of SFIPs but, instead, these activities were done directly by the insurance company that issued the policies.  Id., Ex. 7 (Davis Dep.) at 14 and 25.  Jones has not presented any evidence to refute or contradict that which has been presented by RKW.  Accordingly, the Court finds that Jones has failed to establish a genuine issue of material fact with regard to her negligence claim to the extent it is predicated on allegations that RKW (1) negligently failed to provide proper notice of the expiration of her Flood Policy, (2) improperly interpreted and applied the terms of that policy as well as governing federal regulations, and (3) negligently allowed the her Flood Policy to lapse contrary to NFIP regulations and, therefore, that RKW is entitled to summary judgment on this claim.

Jones's remaining theory is that RKW was negligent by failing to timely provide a correct premium for renewing the policy. In her Response to the Motion of RKW for Summary Judgment, Jones argues that RKW is liable because it failed to exercise good faith and reasonable diligence to procure flood insurance for her on the best terms it could obtain as required under Mississippi law. See Resp. to Mot. for Summ. J. [Docket No. 109], ¶¶ 19, 21 (citing First United Bank of Poplarville v. Reid, 612 So. 2d 1131, 1137 (Miss. 1992) ("An insurance agent owes the duty to his principal to exercise good faith and reasonable diligence to procure insurance on the best terms he can obtain, and any negligence or other breach of duty on his part which defeats the insurance he procures will render him liable for the resulting loss.")). Jones further argues that RKW breached its state law duty by failing to (1) notify her that Fidelity had requested additional information for the purpose of calculating her renewal premium; (2) use diligent efforts to obtain the Elevation Certificate requested by Fidelity; and (3) notify her that the renewal premium for continued coverage under her existing Flood Policy would be calculated using tentative rates in the event Fidelity did not timely receive the information it had requested for the purpose of re-underwriting the policy. Id. at ¶ 20.

The argument raised by Jones in opposition to the Motion of RKW for Summary Judgment, that is her claim against RKW is

predicated on a state law theory of negligent procurement, was previously raised, and rejected by Judge Senter when he considered the motions to dismiss and quash jury demand filed by the defendants in this case.   In response to those motions, Jones argued that this "case is, and always has been a 'procurement case' involving the failure of [the defendants] to properly procure flood insurance for [her]" and, therefore, was governed by state law. See Resp. to Mot. to Dismiss [Docket No. 56], ¶ 4; Resp. to Mot. to Quash Jury Demand [Docket No. 52], ¶ 4.   In his Memorandum Opinion, Judge Senter found:

> Plaintiff has characterized her cause of action as a state-law claim for failure to procure flood insurance.... But, the allegations of the complaint assert that her claim is for non-renewal of an existing flood policy, and these allegations state a cause of action that does arise under federal law, specifically under the National Flood Insurance Act, 42 U.S.C. § 4001, et seq., and the governing regulations.

See Mem. Op. [Docket No. 63], at 4.[5]   Judge Senter further held that the "NFIA preempts state law claims related to the administration of an existing flood policy, and ... does not provide for the recovery of any damages other tha[n] flood insurance benefits in the event a claimant proves a right of recovery under the regulations."   Id.   See also Newman, 2006 WL

---

[5]   Although Jones was placed on notice that the allegations in her Complaint were read as asserting a claim for non-renewal of an existing Flood Policy, as opposed to a claim for failure to procure flood insurance, she made no attempt to amend her Complaint in order to clarify the theory under which she was proceeding against RKW.

2632116 at *2 (finding that "the plaintiffs' NFIP policy claims do not arise from initial procurement, but rather from the administration of an existing flood policy over many years; therefore, state law claims are preempted and federal jurisdiction exists.").

Based on Judge Senter's prior findings, the Court finds that Jones's state law theory of negligent procurement is preempted by federal law. Accordingly, the Court finds that her arguments, as well as the evidence she has submitted in support of those arguments, do not create a genuine issue of material fact in this case. Additionally, as noted above, Jones has not presented any evidence to refute that of RKW, which establishes that it was not involved in the renewal process or rating of SFIPs, and Jones has not cited any provision in the Flood Policy or federal regulation that were allegedly breached by RKW. Accordingly, the Court finds that RKW is entitled to summary judgment on Jones's claim that RKW was negligent in failing to timely provide a correct premium for renewing her existing Flood Policy.

Finally, the Court finds that Jones has failed to show that there exists a genuine issue of material fact with regard to whether the actions of RKW caused the lapse in flood insurance coverage about which she complains. Although fact questions exist with regard to whether Jones sent the necessary Elevation Certificate to RKW in May or August of 2005, and whether RKW

21

notified Jones that additional information had been requested by Fidelity for rating purposes, Jones has not shown that these disputes are material on the issue of why the Flood Policy was not renewed.

The record shows that Fidelity did not renew the Flood Policy because Jones failed to pay the required renewal premium. Even if the amount of the renewal premium was incorrect as alleged by Jones, she could have paid the required premium based on the tentative rate applied by Fidelity and been entitled to a refund after the actual rate was determined. See Mot. for Summ. J. [Docket No. 100], Ex. 7, at 166. As the record shows that the lapse of coverage about which Jones complains directly resulted from her failure to remit the required renewal premium, the Court finds that RKW is entitled to summary judgment on her negligence claims.

**c. Cross-claim of RKW against Fidelity**

RKW filed a cross-claim against Fidelity seeking indemnification in the event any judgment was returned against it in this case. As the Court has granted the Motion of RKW for Summary Judgment on Jones's claims, the Court finds the cross-claim is moot. Accordingly, the Court will grant the Motion of Fidelity for Summary Judgment on the cross-claim.

22

## IV.   Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Fidelity National Insurance Company for Summary Judgment as to Plaintiff's claims [Docket No. 97] is hereby granted.

IT IS FURTHER ORDERED that Motion of Ross-King-Walker for Summary Judgment as to Plaintiff's claims [Docket No. 100] is hereby granted.

IT IS FURTHER ORDERED that the Motion of Fidelity National Insurance Company for Summary Judgment as to Cross-Plaintiff's claims [Docket No. 99] is hereby granted.

IT IS FURTHER ORDERED that the parties' motions in limine, and motion to extend time in which to respond to said motions [Docket No. 96, 120, 121] are hereby dismissed as moot.

A Final Judgment dismissing this case with prejudice shall be entered this day.

SO ORDERED this the 22nd day of August, 2008.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE